Graham **RAMSAY**, Petitioner,

v.

**U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 93–1291.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1993.

Decided Jan. 13, 1994.

---

ARGUED: Malvern Clopton Burnett, Law Offices of Malvern Clopton Burnett, New Orleans, LA, for petitioner. Francesco Isgro, Office of Immigration Litigation, Civil Div., U.S. Dept. of Justice, Washington, DC, for respondent. ON BRIEF: Stuart E. Schiffer, Acting Asst. Atty. Gen., Richard M. Evans, Asst. Director, Office of Immigration Litigation, Civil Div., U.S. Dept. of Justice, Washington, DC, for respondent.

Before HAMILTON, Circuit Judge, SPROUSE, Senior Circuit Judge, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.

## OPINION

HAMILTON, Circuit Judge:

Dr. Graham Ramsay (Ramsay) petitions for review of the decision by the Board of Immigration Appeals (BIA) finding that he was subject to deportation pursuant to § 241(a)(2)(B) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1251(a)(2)(B), because he entered the United States without inspection. In the alternative, Ramsay argues that, should his petition for review be denied, we should reinstate the voluntary departure which the BIA granted Ramsay pursuant to § 244(e)(1) of the Act, 8 U.S.C. § 1254(e)(1).

We conclude that the doctrine of collateral estoppel bars Ramsay's challenge to the deportation order and, therefore, deny Ramsay's petition for review. We also conclude that Ramsay is entitled to reinstatement of the BIA's grant of a thirty-day voluntary departure.

## I

The facts of this appeal are not disputed by either party. Ramsay is a native and citizen of Great Britain. He originally entered the United States in February 1987 on a J–1 exchange visa as a post-doctoral research associate in the Department of Chemistry at the University of New Orleans. His visa was valid through January 31, 1989, but, upon expiration of his visa, Ramsay failed to leave the United States or file a request for an extension of his visa.

On June 23, 1989, Ramsay married Cheryl Caine, a United States citizen. The next day, the couple traveled to Canada. When the couple attempted to reenter the United States on the same day at Niagara Falls, New York, the United States Immigration Inspector refused entry to Ramsay because his J–1 visa had expired. The Inspector told Ramsay that he was ineligible for an automatic visa revalidation and suggested that he attempt to obtain a new J–1 visa from the United States Consulate in Toronto, Canada.

Instead of going to Toronto, Ramsay, his wife and a third individual traveled to a second inspection point. There, a second Inspector asked the three occupants of the vehicle "where are you from," to which Ramsay and the other two vehicle occupants each responded: "U.S." (A.R. 176). Ramsay concedes that he offered his response "intend[ing] to enter the U.S. by misrepresentation." (Brief of Petitioner 13). Thereafter, the Inspector permitted the three vehicle occupants to enter the United States without further questioning or delay.

On July 21, 1989, in an attempt to remain legally in the United States, Ramsay, along with his wife, filed an Immigrant Visa Petition for an Alien Relative (Form I–130), an Application for Adjustment of Status to Permanent Resident (Form I–485), and an Application for Waiver of Grounds of Excludability (Form I–601) with the Immigration and Naturalization Service (INS) district office in New Orleans, Louisiana. Along with the submission of these forms, Ramsay voluntarily submitted an affidavit fully disclosing the circumstances of his last entry into the United States. The couple hoped the Application for Waiver would allow Ramsay to avoid any adverse consequences resulting from the misrepresentations used to enter the United States.

The INS subsequently denied the Adjustment of Status application, reasoning that Ramsay had not been "inspected" as an alien upon his last entry into the United States.[1]

---

1.  Section 245(a) of the Act, 8 U.S.C. § 1255(a), authorizes the Attorney General to grant adjustment of status. That statute provides, in relevant part:

    The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

In its denial, the INS failed specifically to address whether Ramsay was excludable, but the INS examiner noted on Ramsay's Form I–130, which was forwarded to the United States Embassy in London, that she believed Ramsay was excludable from the United States.

Subsequently, Ramsay requested the INS to reconsider its decision and also requested advance parole which would allow him to remain in the United States while his Application for Waiver of Grounds of Excludability was adjudicated. On December 7, 1989, the INS denied the request for reconsideration and advance parole. On January 23, 1990, the INS District Director in New Orleans issued a formal decision denying Ramsay's Application for Adjustment of Status on the basis that he was statutorily ineligible for adjustment of status because he had entered the United States without "inspection." (A.R. 198–99).[2] However, the District Director granted Ramsay voluntary departure until February 22, 1990.

On February 22, 1990, in an attempt to challenge the INS's decision, Ramsay filed suit in the United States District Court for the Eastern District of Louisiana. In his complaint, Ramsay sought a declaratory judgment that he was eligible for adjustment of status and advance parole. Thereafter, both Ramsay and the INS filed motions for summary judgment. On March 19, 1990, pending resolution of the summary judgment motions, the INS issued an Order to Show Cause, charging Ramsay with deportability because he entered the United States without inspection.[3] On January 14, 1991, the district court granted the INS's motion for summary judgment in the declaratory judg-

ment action. The district court concluded that Ramsay did not qualify for adjustment of status pursuant to § 245(a) of the Act, 8 U.S.C. § 1255(a), finding that "by his explicit and overt actions, Ramsay intentionally avoided the inspection process by alleging he was a United States citizen when reentering the United States from Canada in June 1989." (A.R. 143). Ramsay then filed a notice of appeal with the United States Court of Appeals for the Fifth Circuit, intending to challenge the district court's grant of summary judgment. However, Ramsay subsequently dismissed the appeal on his own motion.[4]

On August 14, 1991, the Immigration Judge (IJ) acted on the pending deportation charges against Ramsay, finding Ramsay deportable as an alien who had entered the United States without inspection pursuant to § 241(a)(2)(B) of the Act, 8 U.S.C. § 1251(a)(2)(B). The IJ reasoned in part:

> [T]here is no way on earth I would go beyond or over or through [the prior judgment of the district court] and gainsay any of the findings that were made by the judge in that case. And I think the judge clearly found that Dr. Ramsay was not inspected.

(A.R. 59). However, the IJ exercised its discretion by granting Ramsay a six-month voluntary departure, lasting until February 14, 1992. (A.R. 61).

On August 23, 1991, Ramsay filed his notice of appeal to the BIA.[5] (A.R. 42). On February 8, 1993, the BIA dismissed the appeals. (A.R. 2–8). The BIA concluded that Ramsay entered the United States without inspection, reasoning that Ramsay's response to the Immigration Inspector was "tantamount to a claim of United States citi-

Pursuant to 8 C.F.R. § 245.2(a), the Attorney General delegated this authority to the INS.

2. The record does not disclose the INS's decision on the Immigrant Visa Petition for an Alien Relative.

3. Deportation proceedings may be instituted pursuant to § 241 of the Act, 8 U.S.C. § 1251. That statute provides, in relevant part:
   (a) Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—
   .    .    .    .    .
   (2) entered the United States without inspection or at any time or place other than as designated by the Attorney General....

Under 8 C.F.R. § 242.1, the Attorney General delegated this authority to the INS.

4. Ramsay offers no explanation for his decision to dismiss his appeal.

5. The INS cross-appealed the IJ's decision to grant voluntary departure. (A.R. 18–24).

zenship," and, therefore, "had the effect of significantly frustrating or circumventing the inspection process to which he would have been subjected had he properly identified himself." (A.R. 6). In the alternative, the BIA found that collateral estoppel barred Ramsay's challenge to the issue of inspection. The BIA reasoned that the prior judgment by the district court in favor of the INS served "as *res judicata* as to its finding that [Dr. Ramsay] evaded inspection upon his reentry into this country." (A.R. 7).

Finally, the BIA held that the IJ "was justified in allowing [Ramsay] the minimal deportation relief of voluntary departure." (A.R. 8). Thus, the BIA ordered that Ramsay was "permitted to depart from the United States voluntarily within 30 days from the date of this order...." *Id.*

On March 9, 1993, Ramsay filed his petition for review of the BIA's order with this court.

## II

In his petition for review, Ramsay claims that the IJ and the BIA erred in concluding that he evaded inspection upon entering the United States on June 24, 1989. In response, the INS contends the doctrine of collateral estoppel bars Ramsay from asserting this claim. Specifically, the INS reasons that the United States District Court for the Eastern District of Louisiana previously adjudicated the issue of inspection when it found that Ramsay was not entitled to adjustment of status. Because Ramsay's challenge to the deportation order in the present case raises the identical inspection issue, the INS concludes that Ramsay should be collaterally estopped from rearguing the inspection issue. We agree.

■ Collateral estoppel or issue preclusion forecloses "the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Virginia Hosp. Ass'n. v. Baliles,*

830 F.2d 1308, 1311 (4th Cir.1987) (citation omitted). For this doctrine to apply, the party asserting it must establish five elements:

(1) the issue precluded must be identical to one previously litigated;

(2) the issue must have been actually determined in the prior proceeding;

(3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding;

(4) the prior judgment must be final and valid; and

(5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Coffey v. Dean Witter Reynolds, Inc.,* 961 F.2d 922, 925 (10th Cir.1992); *Central Transport, Inc. v. Four Phase Systems, Inc.,* 936 F.2d 256, 259 (6th Cir.1991).

■ In the present case, Ramsay does not question whether the first four elements exist and we believe these elements are clearly established. However, Ramsay does contest whether he had a full and fair opportunity to litigate the issue of inspection in the prior proceeding. Ramsay reasons that in the prior proceedings the district court merely reviewed the INS's denial of his adjustment of status application to determine whether the INS acted arbitrarily or capriciously. Because the district court in the prior proceeding did not conduct a full *de novo* review of the inspection issue, Ramsay contends that the prior proceeding did not afford him a full and fair opportunity to litigate the inspection issue. We disagree.

■ Our review of the prior proceedings indicates that the analysis by the district court was tantamount to a *de novo* review of the INS's denial of Ramsay's Adjustment of Status application. Specifically, the district court began its analysis by recognizing that, pursuant to 8 U.S.C. § 1255(a), an alien may only receive an adjustment of status if he is "inspected." Then, after considering the undisputed facts—which are identical to the ones before us—and the relevant BIA prece-

dent, the district court "f[ou]nd[ ] that by his explicit and overt actions, Dr. Ramsay intentionally avoided the inspection process by alleging he was a United States citizen when re-entering the United States from Canada in June 1989." (A.R. 143). Thus, instead of merely determining whether sufficient evidence justified the INS's decision, the district court made a *de novo* finding that Ramsay avoided inspection upon entering the United States. Under such circumstances, we cannot say that the proceedings before the district court deprived Ramsay of a full and fair opportunity to litigate the inspection issue.[6]

Accordingly, we hold that collateral estoppel precluded Ramsay from relitigating the inspection issue before the IJ, the BIA or this court. Because Ramsay was not inspected upon his entry into the United States, the BIA did not err in finding Ramsay subject to deportation under § 241(a)(2)(B) of the Act, 8 U.S.C. § 1251(a)(2)(B).

### III

■ Ramsay next argues that, if we determine Ramsay is subject to deportation, we should also reinstate the BIA's grant of a thirty day voluntary departure. In response, the INS claims that only the District Director for the INS has the discretion to grant voluntary departures. Because a decision to grant or extend voluntary departure requires several factual findings which a court of appeals is not suited to make, the INS argues

that, in the present case, we should refrain from reinstating Ramsay's voluntary departure. For the reasons that follow, we find Ramsay's argument more persuasive.

■ Section 244(e)(1) of the Act, 8 U.S.C. § 1254(e)(1), authorizes the grant of voluntary departure. That statute provides, in pertinent part:

> The Attorney General may, in his discretion, permit any alien under deportation proceedings ... to depart voluntarily from the United States at his own expense in lieu of deportation....

*Id.* Although a voluntary departure may be initially granted by an Immigration Judge or the BIA, the decision to extend the voluntary departure period is within the sole discretion of the INS District Director. 8 C.F.R. §§ 244.1, 244.2. Determining an alien's eligibility for voluntary departure or an extension thereof requires the following factual findings: (a) the alien "is, and has been a person of good moral character for at least five years immediately preceding [the] application for voluntary departure"; (b) the alien has not been convicted of an aggravated felony; and (c) the alien "is willing and has the immediate means with which to depart promptly from the United States." 8 U.S.C. § 1254(e)(1), 8 C.F.R. § 244.1.[7]

The authorities are apparently divided on whether a court of appeals should automatically reinstate a voluntary departure when it affirms a deportation order. For example, in

---

**6.** In the alternative, we also believe the BIA correctly found Ramsay subject to deportation pursuant to § 241(a)(2)(B) of the Act, 8 U.S.C. § 1251(a)(2)(B), because Ramsay evaded inspection. Several courts have described the acts which amount to an evasion of inspection. *See, e.g., United States ex rel. Volpe v. Smith,* 62 F.2d 808, 811 (7th Cir.) ("Appellant's deception, therefore, was of a nature which resulted in the avoidance of an inspection.... Considering the purpose of inspection, we conclude that anything which defeats it—fraud, deceit, or duress—negatives it, avoids it."), *aff'd.,* 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298 (1933); *Saadi v. Carr,* 26 F.2d 458 (9th Cir.) ("To enter without inspection is to enter in evasion of the appropriate investigation for the purpose of ascertaining whether the alien is entitled to enter."), *cert. denied,* 278 U.S. 616, 49 S.Ct. 21, 73 L.Ed. 540 (1928).

Under these principles, Ramsay clearly avoided inspection when he entered the United States. Specifically, Ramsay concedes "that he *intended* to enter the U.S. by misrepresentation." (Brief of Petitioner 13) (emphasis added). Clearly, Ramsay intended to enter the United States in "evasion of the appropriate investigation...." *Saadi,* 26 F.2d at 458. The cases on which Ramsay relies, *Smiley v. United States,* 181 F.2d 505 (9th Cir.), *cert. denied,* 340 U.S. 817, 71 S.Ct. 48, 95 L.Ed. 601 (1950), and *Matter of Areguillan,* 17 I & N 308 (BIA 1980), are inapposite. Unlike the instant matter, none of these cases involve statements by an alien made *with the intent to mislead the Immigration Inspector.*

**7.** The discretionary award of voluntary departure carries significant consequences. For example, it enables the alien to evade the stigma of deportation and permits the alien to choose his destination. Most importantly, "the grant of volun-

*Contreras–Aragon,* 852 F.2d at 1092–93, the Ninth Circuit held that if the BIA's deportation order included a grant of voluntary departure, affirming the deportation order necessarily encompassed the reinstatement of the voluntary departure. The court reasoned:

> The result of the deportation hearing, including the discretionary determinations, is *one* final order of deportation reviewable by the courts of appeals.... It is clear that a determination concerning voluntary departure is one of those determinations made during the deportation hearing that form a part of the final order of deportation.

*Id.* at 1092 (citation omitted). In other words, the Ninth Circuit viewed the grant of voluntary departure as an inseverable component of the deportation order such that affirming the deportation order necessarily required reinstatement of the voluntary departure.

■ Other courts, while not expressly rejecting *Contreras–Aragon,* have reached a contrary conclusion. For example, in *Kaczmarczyk v. INS,* 933 F.2d 588, 598 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991), the Seventh Circuit declined to reinstate the voluntary departure granted by the BIA even though it affirmed the BIA's deportation order. In reaching this conclusion, the court emphasized that 8 C.F.R. § 244.2 vests the District Director with the "sole discretion" to reinstate voluntary departures and, so long as the INS refrains from "wielding its discretion to withhold voluntary departure to deter applicants from seeking judicial review of BIA decisions," aliens should seek to extend the period for voluntary departure "by filing a motion with the district director to reinstate voluntary departure." *Kaczmarczyk,* 933 F.2d at 598.

The First Circuit adopted a similar approach to the one created by the Seventh Circuit, with one important addition. Specifically, in *Umanzor–Alvarado v. INS,* 896 F.2d 14, 16 (1st Cir.1990), the court held that it had the authority to reinstate voluntary departure when the INS offered no evidence suggesting that, in the interim period between the BIA's and its decisions, the alien had become ineligible for voluntary departure. The court opined:

> [W]e note that the government does *not* suggest it will present the district director with any other reason for refusing the reinstatement. Under these circumstances, to require the petitioner to apply to the district director to pass upon the matter would be pointless, for the director could not lawfully refuse the reinstatement. We see nothing in the law that requires us to waste time and resources or that deprives us of the legal power to order the legally appropriate remedy—a remedy already granted by the Board.

*Id.*

We find the approach utilized by the Seventh Circuit, as modified by the First Circuit, to be the most principled. As mentioned, a decision to extend the period for voluntary departure requires consideration of several facts, including whether the alien is of good moral character and has the present means with which to depart the United States. A court of appeals is not suited to undertake such a factual analysis. The approach adopted by the Seventh Circuit, as modified by the First Circuit, addresses these concerns in that it leaves the discretion to extend the period for voluntary departures with the District Director *except* where the INS is "wielding its discretion to withhold voluntary departure to deter applicants from seeking judicial review of BIA decisions," *Kaczmarczyk,* 933 F.2d at 598, *or* when "the [INS] does *not* suggest it will present the district director with any other reason for refusing the reinstatement." *Umanzor–Alvarado,* 896 F.2d at 16.

---

tary departure facilitates the possibility of return to the United States." *Contreras–Aragon v. INS,* 852 F.2d 1088, 1093 (9th Cir.1988) *(en banc)* (citations omitted). For example, "[a]n alien who voluntarily departs may return immediately

... as the beneficiary of an immigrant visa based on the marriage to a United States Citizen [while] a deported alien must seek special permission to return to the United States." *Id.* (citing 8 U.S.C. § 1182(a)(17)).

In contrast, the Ninth Circuit's approach creates a potentially undesirable result. Specifically, under the *Contreras–Aragon* rule, a court might reinstate voluntary departure even though, in the interim period between the BIA's and court of appeals' decisions, the alien may have committed acts which would preclude him from eligibility for voluntary departure, *e.g.*, an armed bank robbery.

Thus, we hold that the decision to reinstate or extend voluntary departures should usually be left to the discretion of the District Director, who is better suited to consider the factual prerequisites which determine an alien's eligibility for voluntary departure. A court of appeals should reinstate a voluntary departure granted by the BIA only when: (1) the INS is "wielding its discretion to withhold voluntary departure to deter applicants from seeking judicial review of BIA decisions," *Kaczmarczyk*, 933 F.2d at 598, *or* (2) "the [INS] does *not* suggest it will present the district director with any other reason for refusing the reinstatement." *Umanzor–Alvarado*, 896 F.2d at 16.

Applying these principles to the present case indicates that we should reinstate Ramsay's thirty-day period for voluntary departure. Specifically, the record contains no evidence that circumstances which originally entitled Ramsay to voluntary departure have changed. Nor has the INS "suggest[ed] [that] it will present the district director with any other reason for refusing the reinstatement" for Ramsay. *Umanzor–Alvarado*, 896 F.2d at 16. Thus, "the director could not lawfully refuse [Ramsay's] reinstatement." *Id.* Accordingly, we hereby reinstate the thirty-day period for Ramsay's voluntary departure.[8]

## IV

For the reasons stated herein, we deny Ramsay's petition for review and direct the government to treat the voluntary departure period as beginning to run on the date this court's mandate becomes effective.

*SO ORDERED.*

---

8. When a court reinstates the period for voluntary departure, "the number of days for voluntary departure *initially afforded* by the BIA commence[s] to run." *Contreras–Aragon*, 852 F.2d at 1093 (emphasis added). *See also, Umanzor–Al-varado*, 896 F.2d at 16. In other words, the period for voluntary departure granted by the BIA begins to run anew from the date the mandate issues from the court of appeals reinstating the voluntary departure.