**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LARKEN MANAGEMENT,
INCORPORATED,
<u>Plaintiff-Appellant,</u>

and

LARKEN HOTELS LIMITED
PARTNERSHIP,

No. 97-2625

<u>Plaintiff,</u>

v.

SMWNPF HOLDINGS, INCORPORATED;
SHEET METAL WORKERS' NATIONAL
PENSION FUND,
<u>Defendants-Appellees.</u>

LARKEN MANAGEMENT,
INCORPORATED,
<u>Plaintiff-Appellee,</u>

and

LARKEN HOTELS LIMITED
PARTNERSHIP,

No. 98-1057

<u>Plaintiff,</u>

v.

SMWNPF HOLDINGS, INCORPORATED;
SHEET METAL WORKERS' NATIONAL
PENSION FUND,
<u>Defendants-Appellants.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-1574-A)

Argued: October 28, 1998

Decided: November 30, 1998

Before WILKINSON, Chief Judge, and LUTTIG and
MOTZ, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Luttig wrote the opinion, in
which Chief Judge Wilkinson and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** L. Richard Williams, GRANT, WILLIAMS, LAKE &
DANGERFIELD, P.C., Phoenix, Arizona, for Appellant. John
O'Brien Clarke, Jr., HIGHSAW, MAHONEY & CLARKE, P.C.,
Washington, D.C., for Appellees. **ON BRIEF:** Mark C. Dangerfield,
GRANT, WILLIAMS, LAKE & DANGERFIELD, P.C., Phoenix,
Arizona; Mark Fox Evans, REID & PRIEST, L.L.P., Washington,
D.C., for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

LUTTIG, Circuit Judge:

Larken Management, Inc. ("LMI") appeals a district court verdict
denying its claim to a hotel that appellee SMWNPF Holdings, Inc.
("Holdings") owns. Holdings cross-appeals the district court's denial
of its counterclaim for attorney's fees and other litigation costs. For
the reasons that follow, we affirm.

2

I.

Holdings owns a Doubletree hotel in Nashville, Tennessee, which it purchased in 1991. Holdings is a wholly owned subsidiary of the Sheet Metal Workers' National Pension Fund ("Fund"), which at the time was a partner with LMI's predecessor (Larken Properties, Inc.) and with Larken, Inc., in Larken Holdings Limited Partnership ("LHLP"). Ed Williams, former manager of investments at the Fund, was then Vice-President of Holdings. Stewart DeVore and Meg Carrell were the chief lawyers for the Larken entities.

LHLP had originally planned to purchase the Doubletree, with the Fund contributing financing. But in July 1991, LHLP missed an interest payment on a previous loan from the Fund, raising concerns about its financial viability. At an August 23, 1991, meeting of Williams, DeVore, and officials of Larken Properties, the parties agreed to modify the deal so that Holdings would take title to the Doubletree. DeVore drafted an Assignment Agreement to carry out this modification. Williams objected to several clauses, particularly ones stating that Holdings would hold the Doubletree in trust for LHLP and eventually convey it to LHLP. DeVore thus prepared a second draft omitting the "in trust" and "convey" language. The sale closed in September, with Holdings taking title to the Doubletree. Williams, however, signed the first draft, by mistake he claims.

Years passed, and Holdings continued to hold the Doubletree without protest from LHLP. Even though LHLP was managing the hotel, it claims that it "lost track of the Doubletree" and failed to notice its rights under the Assignment Agreement that Williams had actually signed.

In 1994, LHLP filed for bankruptcy. In its comprehensive list of assets, which it was required to file with the bankruptcy court, LHLP failed to list the Doubletree. In its disclosure statement, LHLP stated that under the Reorganization Plan "title to all of the Hotels and all of the Cash Flow will be delivered to" various LHLP creditors, such that "no present assets will remain with the reorganized Debtor." As part of the Plan, the Fund's interest in LHLP ended. The Fund and LHLP also, pursuant to the Plan and the bankruptcy judge's order, entered into a Release of most of their claims against each other. The

judge's final order, which took effect in September 1994, provided, pursuant to 11 U.S.C. § 1141, that "[t]he Debtor, all holders of Claims and Interests and all other parties in interest are hereby bound by the Plan."

Over a year and a half later, in April 1996, after"discovering" the signed Assignment Agreement, LHLP asked the bankruptcy court to reopen the Plan to allow it to list its claim to the Doubletree. The bankruptcy judge denied the motion.

In January 1997, Holdings sued DeVore and Carrell in federal court in Texas, alleging that they had represented Holdings, not LHLP, in the Doubletree deal, and that they had committed malpractice and breached fiduciary duties in allowing Williams' "mistake." On October 6, 1997, that court granted summary judgment against Holdings on the malpractice claim, holding that DeVore and Carrell were LHLP's attorneys and, in the alternative, that they acted reasonably. SMWNPF Holdings, Inc. v. DeVore , No. 4:97-CV-033-A (N.D. Tex. 1997).

Fifteen days later, following a bench trial, the district court issued its decision in the suit before us, which LMI had filed in November 1996 on behalf of LHLP. The court found numerous grounds for rejecting LMI's claim to the Doubletree: res judicata, based on the bankruptcy Plan; the Release; judicial estoppel; equitable estoppel; and ERISA. The court also rejected LMI's state-law fraud claim as barred by the statute of limitations and failing on the merits. Finally, the court rejected Holdings' counterclaim for attorney's fees and other litigation costs as "damages" for breach of the Release, and refused as "moot" LMI's motion to file DeVore as supplemental authority.

II.

With regard to the res judicata effect of the bankruptcy Plan, we affirm on the reasoning of the district court. LHLP could have raised its claim to the Doubletree during the bankruptcy proceeding; it did not; and LMI has offered no good reason for this failure. See generally In re Varat Enterprises, 81 F.3d 1310 (4th Cir. 1996); Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869 (2d Cir. 1991).

4

Res judicata is no less appropriate as a consequence of the bankruptcy court's denial of the motion to reopen the Plan. The bankruptcy court held that its denial of the motion barred "reopening the Chapter 11 case to pursue the potential Doubletree Hotel claim <u>in this Court</u>." Because of the "limited scope" of the hearing on the motion to reopen, which "prevented the parties from fully litigating" res judicata and related issues, the court stated that its order "should not be interpreted to preclude Debtor from pursuing any cause of action for recovery of the Doubletree Hotel in any other jurisdiction." This ruling merely states that the <u>denial of the motion to reopen</u> should not be treated as preclusive, because the hearing <u>on that motion</u> had been limited. It says nothing about the res judicata effect of the Plan itself. On the contrary, and as the district court found, in order to deny the motion to reopen, the bankruptcy court necessarily had to find that LHLP could have raised its claim to the Doubletree during the bankruptcy proceeding.

With regard to the meaning of the Release, which the district court held bars LMI's suit for the Doubletree, we also affirm on the reasoning of the district court. As to Holdings' counterclaim for breach of the Release, we agree with the district court that the American Rule bars an award of attorney's fees and other litigation costs as "damages" for such a breach, unless the release provides for them. <u>See</u> <u>Bunnett</u> v. <u>Smallwood</u>, 793 P.2d 157, 162 (Colo. 1990). It is simple for parties to include such a clause in a release, and the American Rule prevents haggling over whether a breach is "obvious," as the alternative rule requires. <u>See Artvale, Inc.</u> v. <u>Rugby Fabrics Corp.</u>, 363 F.2d 1002, 1008 (2d Cir. 1966) (holding that where release is silent regarding attorney's fees for a breach, court will allow them "only for suits brought in obvious breach or otherwise in bad faith"). Other rules already provide remedies for bad faith suits. <u>See</u> Fed. R. Civ. P. 11. Because the Release is silent on attorney's fees, the district court properly ruled against Holdings.

We see no reason to reach the issues of judicial estoppel, equitable estoppel, and ERISA, since both res judicata and the Release suffice to defeat LMI's claim. With regard to LMI's state-law fraud claim, to the extent that res judicata and the Release do not bar it, we affirm on the reasoning of the district court.

5

Finally, we reject LMI's assertion that DeVore , issued two weeks before the district court's decision, bolsters its claim via collateral estoppel. Although the district court should have considered the possible preclusive effect of DeVore, its failure to do so does not undermine its judgment.

LHLP argues that the court in DeVore held (1) that DeVore and Carrell had no reason to know of Williams' alleged mistake and (2) that Williams did not make a mistake. We agree that the court made the first holding, but that does not alter the res judicata effect of the bankruptcy Plan or the force of the Release.

We disagree with LMI's claim that the Texas court made the second holding. On the contrary, it did not reach the issue of whether Williams made a mistake, nor did it need to. The court stated that DeVore and Carrell

> knew that Williams had in his possession both versions of the agreement. They knew [Holdings] anticipated reconveying the Doubletree to LHLP in the near future. They knew that . . . the document he signed was short, to the point, and needed no explanation. The [ ] language that Williams has recently testified that he specifically reviewed was surrounded by the trust and conveyance language . . . .[DeVore and Carrell] could reasonably have believed that Williams's execution of the [first] assignment agreement was consistent with the way the transaction was supposed to occur.

This passage considers only the perspective of DeVore and Carrell, not that of Williams. The only issue before the court was the reasonableness of DeVore and Carrell's behavior, and that was all that it decided. Because issue preclusion requires that an issue "have been actually determined in the prior proceeding," Ramsay v. INS, 14 F.3d 206, 210 (4th Cir. 1994), we cannot find preclusion on this issue, even assuming that such would be relevant.

CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED

6