**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EDITH STEWART,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1597

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-848-462)

Argued: January 27, 1999

Decided: June 23, 1999

Before WILKINS, WILLIAMS, and MOTZ, Circuit Judges.

_____

Petition for review denied by published opinion. Judge Williams
wrote the opinion, in which Judge Wilkins and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Ronald Darwin Richey, Rockville, Maryland, for Peti-
tioner. Kristen A. Giuffreda, Office of Immigration Litigation, Civil
Division, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C., for Respondent. **ON BRIEF:** Frank W. Hunger, Assis-
tant Attorney General, Elizabeth A. Welsh, Senior Litigation Counsel,
Office of Immigration Litigation, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

WILLIAMS, Circuit Judge:

Edith Miller Stewart, a citizen and native of Sierra Leone, petitions for review of a March 1998 decision by the Board of Immigration Appeals (BIA) denying her motion to reopen deportation proceedings to apply for adjustment of status. We first conclude that we possess jurisdiction over the BIA's denial of her motion to reopen, which was based on the BIA's finding that Stewart failed to demonstrate "exceptional circumstances" excusing her overstay in the United States past her voluntary departure date. Because the BIA did not abuse its discretion in reaching this conclusion, we affirm the BIA's March 1998 decision and deny Stewart's petition for review.

I.

Stewart entered the United States on or about August 13, 1993, as a nonimmigrant visitor authorized to remain in the United States until February 12, 1994. On March 18, 1994, the INS issued an Order to Show Cause charging Stewart with deportability pursuant to Section 241(a)(1)(B) of the Immigration and Nationality Act (INA) for remaining in the United States longer than permitted. By way of written pleadings, Stewart conceded the allegations and the charge of deportability. Concurrent with her concession of deportability, Stewart submitted applications for political asylum, withholding of deportation, and voluntary departure.

On February 21, 1995, Stewart appeared before an immigration judge (IJ) and presented testimony in support of her applications for asylum and for withholding of deportation. Stewart testified that she left Sierra Leone because of the ongoing civil war and political unrest that affected both her and her family. According to Stewart, her father was killed eighteen years ago while on military duty, and her aunt, who was the Minister of Health, was under house arrest following a coup that had overthrown the government. Stewart told the IJ that in March 1991, she was part of a group of travelers who were tied up, beaten, and robbed by rebels, and as a result of the attack, Stewart was hospitalized for two weeks. She also reported that following her release from the hospital, she heard on the news that the rebels had

2

attacked her hometown, and she has been unable to contact her mother since that time. Shortly thereafter, Stewart left Sierra Leone to live in Ethiopia. After living in Ethiopia for eighteen months, she left because of the war there and came to the United States to live with another aunt.

At the conclusion of the hearing, the IJ denied Stewart's applications for asylum and withholding of deportation. The IJ determined that Stewart had a fear of being the object of general violence incident to a civil war, a fear that does not fit within the concept of persecution for purposes of political asylum. The IJ noted that although Stewart was the victim of violence, it did not appear that the attack had anything to do with her race, religion, nationality, membership in a particular social group, or political opinion. The IJ further noted that Stewart had found a safe haven in Ethiopia, and had not presented any evidence that Ethiopia was suffering from the same kinds of problems as Sierra Leone. The IJ concluded that Stewart had not established a fear of persecution warranting asylum or withholding of deportation. The IJ granted Stewart the relief of voluntary departure on or before May 21, 1995, pursuant to Section 244(e)(1) of the INA. The IJ warned Stewart both orally and in writing that if she failed to leave by the deadline date, she would be ineligible for"voluntary departure again in the future, suspension of deportation, and adjustment of status or change of status as provided for in Sections 242(b), 244(e), 245, 248, or 249 of the [INA]." (A.R. at 213.)

Stewart appealed the denials of asylum and of withholding of deportation to the Board of Immigration Appeals (BIA). While that appeal was pending, Stewart filed a motion to remand the case for consideration of adjustment of status based on her November 15, 1994 marriage to a United States citizen. By order of August 2, 1996 (the August 1996 Order), the BIA denied Stewart's motion to remand because she had failed to file a sworn application for adjustment of status (Form I-485) demonstrating her prima facie eligibility for adjustment. The August 1996 Order also dismissed Stewart's appeal from the IJ's decision denying asylum and withholding of deportation on the ground that Stewart had established only that she is fleeing general conditions of violence affecting her country. The August 1996 Order extended Stewart's period of voluntary departure so that it expired thirty days thereafter. On March 19, 1997, this Court denied

3

Stewart's petition for review of the BIA's August 1996 Order. <u>Miller v. INS</u>, 108 F.3d 1372, No. 96-2201 (4th Cir. March 19, 1997) (unpublished).**1**

On August 28, 1996, three days before the expiration of her thirty-day extension for voluntary departure, Stewart filed a motion to reopen deportation proceedings to apply for adjustment of status.**2** The BIA issued an order denying Stewart's motion on March 26, 1998 (the March 1998 Order). The BIA did not reach the merits of her petition but instead found that the record contained no evidence that Stewart had obtained an extension of her voluntary departure date from the INS district director. The BIA also found that Stewart failed to depart from the United States within the thirty-day extension period of voluntary departure and did not submit any evidence showing that her failure to do so was the result of "exceptional circumstances." In light of these facts, the BIA concluded that Stewart was "ineligible, pursuant to section 242B(e)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(e)(2)(A), for the relief requested."**3** (A.R. at 3.)

_____

**1** Stewart's maiden name was Miller.

**2** A motion to reopen will be granted only where the alien offers evidence in support of the relief requested that "is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.2(c) (1998). In support of her motion to reopen to apply for adjustment of status, Stewart offered her marriage, which was not considered by the IJ due to the failure of her attorney to file the correct form.

**3** Section 242B(e)(2)(A) provides:

> Subject to [receiving written and oral notice of the consequences of remaining in the United States after the scheduled date of departure], any alien allowed to depart voluntarily under section 1254(e)(1) of this title . . . who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for[relief including, <u>inter alia</u>, adjustment of status] for a period of 5 years after the scheduled date of departure or the date or unlawful reentry, respectively.

8 U.S.C.A. § 1252b(e)(2)(A) (West 1996) (repealed by IIRIRA). Section 242B(f)(2) defines "exceptional circumstances" as "exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C.A.§ 1252b(f)(2).

4

Stewart now petitions for review of the March 1998 Order. Stewart argues on appeal that the BIA abused its discretion in denying her motion to reopen by failing to consider the following "exceptional circumstances": (1) she was detained by the INS and not allowed to leave the United States; (2) she became seriously ill and was hospitalized; (3) her father was killed and her mother is missing and presumed dead; (4) the conditions in Sierra Leone were so precarious that she could not return; and (5) her previous counsel committed malpractice, which seriously prejudiced her case. In the alternative, Stewart argues that her filing the motion to reopen before the expiration of the voluntary departure period equated to "exceptional circumstances" warranting the grant of her motion to reopen. In opposition, the INS argues that the transitional changes in judicial review included in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546, preclude judicial review of the BIA's March 1998 Order. In the alternative, the INS argues that even if this Court has jurisdiction over Stewart's appeal, the BIA did not abuse its discretion in denying Stewart's motion to reopen.

II.

Before reaching the merits of Stewart's case, we first must determine whether we have jurisdiction over Stewart's petition for review. This determination requires us to proceed in two steps. First, we must decide whether Stewart's petition for review is subject to the pre-IIRIRA law or to the transitional changes in judicial review in IIRIRA by determining what is the "final order of exclusion or deportation" for the purpose of invoking the transitional changes in judicial review. Second, after determining the governing law, we then must decide whether it provides us with jurisdiction over Stewart's appeal.

A.

Prior to the enactment of IIRIRA, judicial review of a BIA order denying a motion to reopen was governed by § 106 of the INA, codified at 8 U.S.C. § 1105a. See Nwolise v. INS, 4 F.3d 306, 309 (4th Cir. 1993). IIRIRA, enacted on September 30, 1996, repealed § 106 and replaced it with revised rules of judicial review to take effect on April 1, 1997. See IIRIRA §§ 306, 309(a). Aliens who were in deportation

5

proceedings before April 1, 1997, are not subject to the new rules. See IIRIRA § 309(c)(1) (as amended). Instead, these aliens are subject to the judicial review provisions in pre-IIRIRA law (the old rules), unless their "final order of exclusion or deportation" is entered more than thirty days after September 30, 1996, in which case they are subject to IIRIRA's transitional changes in judicial review (the transitional rules). See IIRIRA § 309(c)(1), (4) (as amended).**4**

The BIA dismissed Stewart's appeal from the IJ's denial of her applications for asylum and withholding of deportation on August 2, 1996, prior to the enactment of IIRIRA. The BIA dismissed Stewart's motion to reopen deportation proceedings to apply for adjustment of status on March 26, 1998, more than thirty days after the enactment of IIRIRA. Therefore, whether Stewart's petition for review in the instant case is subject to the old rules or to the transitional rules turns on whether the August 1996 Order or the March 1998 Order is considered the "final order of exclusion or deportation." Although IIRIRA's transitional rules make no explicit reference to denials of motions to reopen, this Court and our sister circuits have traditionally interpreted "final order of deportation" in other contexts to include a BIA order denying a motion to reopen. See Nwolise, 4 F.3d at 309 (noting implicitly that an order denying a motion to reopen is a "final

_____

**4** Section 309(c)(1) provides:

> Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings before the title III-A effective date [April 1, 1997] --
>
> (A) the amendments made by this subtitle shall not apply, and
>
> (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

IIRIRA § 309(c)(1).

Section 309(c)(4) provides:

> In the case in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act [September 30, 1996], notwithstanding any provision of section 106 of the Immigration and Nationality Act to the contrary[, the transitional rules apply].

IIRIRA § 309(c)(4).

6

order of deportation" for purpose of invoking judicial review); Sarmadi v. INS, 121 F.3d 1319, 1321 (9th Cir. 1997) (holding that the withdrawal of judicial review from "final orders of deportation" also withdraws jurisdiction from orders denying motions to reconsider or to reopen deportation proceedings); Chow v. INS , 113 F.3d 659, 664 (7th Cir. 1997) (same). In light of this precedent and the lack of any contrary statutory authority in IIRIRA, we agree with the Eighth Circuit that the phrase "order of exclusion or deportation" in IIRIRA's transitional rules includes an order denying a motion to reopen. See Mayard v. INS, 129 F.3d 438, 439 (8th Cir. 1997) (per curiam). We therefore conclude that the March 1998 Order is the relevant "final order of exclusion or deportation," and that Stewart's petition for review from the March 1998 Order is subject to the transitional rules.

B.

Having concluded that the March 1998 Order denying Stewart's motion to reopen is a "final order of deportation" for purposes of invoking the transitional rules, we must now decide whether these rules provide for jurisdiction over Stewart's appeal. As a preliminary inquiry, we must determine whether § 242(g) of the INA, codified at 8 U.S.C. § 1252(g), limits our jurisdiction over Stewart's appeal.[5] In Reno v. American-Arab Anti-Discrimination Comm. , 119 S. Ct. 936 (1999), the Supreme Court clarified the scope of § 1252(g). In rejecting "the unexamined assumption that § 1252(g) covers the universe of

_____

[5] INA § 242(g) provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C.A. § 1252(g) (West 1999). Section 1252(g) went into effect on April 1, 1997, see INS v. Yang, 117 S. Ct. 350, 352 n.1 (1996), while Stewart's motion to reopen was pending before the BIA. Congress expressly provided that § 1252(g) applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." IIRIRA § 306(c)(1).

7

deportation claims," the Court specifically noted the following decisions or actions that would not fall under § 1252(g):

> There are of course many other decisions or actions that may be part of the deportation process -- such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.

American-Arab, 119 S. Ct. at 943 (emphasis added). A motion to reopen is very similar to a motion to reconsider. See 8 C.F.R. 3.2 (1998). By the Supreme Court's logic, the BIA's denial of a motion to reopen would not fall under § 1252(g). Therefore, Stewart's petition for review of the BIA's denial of her motion to reopen is subject to IIRIRA's transitional rules, but not to the limitation of § 1252(g).

Under IIRIRA's transitional rules, this Court has jurisdiction to hear an appeal from the BIA's denial of Stewart's motion to reopen unless an exception applies. See IIRIRA § 309(c)(1) (as amended). The INS invokes § 309(c)(4)(E) of IIRIRA's transitional rules as such an exception. Section 309(c)(4)(E) provides that "there shall be no appeal of any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act)." IIRIRA § 309(c)(4)(E). Stewart moved to reopen her deportation proceedings to apply for adjustment of status pursuant to § 245 of the INA, which provides:

> The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C.A. § 1255(a) (West Supp. 1998). The dispositive issue before us, therefore, is whether the BIA's denial of Stewart's motion to

reopen to apply for adjustment of status is a "discretionary decision under section . . . 245 of the Immigration and Nationality Act." IIRIRA § 309(c)(4)(E).

Our preliminary inquiry is whether the BIA's decision was a "decision under . . . section 245." The BIA explicitly dismissed Stewart's motion to reopen to apply for adjustment of status for her failure to demonstrate "exceptional circumstances" excusing her overstay as required by § 242B(e)(2)(A) of the INA, which provides:

> Subject to [receiving written and oral notice of the consequences of remaining in the United States after the scheduled date of departure], any alien allowed to depart voluntarily under section 1254(e)(1) of this title .. . who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for relief [including, inter alia, adjustment of status] for a period of 5 years after the scheduled date of departure or the date of unlawful reentry, respectively.

8 U.S.C.A. § 1252b(e)(2)(A) (West 1996) (repealed by IIRIRA). According to § 242B(e)(2)(A), an alien who has overstayed her voluntary departure date must make a showing of "exceptional circumstances" before becoming eligible for adjustment of status pursuant to § 245. Section 242B(e)(2)(A), in essence, is a"gate" through which such an alien must pass before the BIA will even consider the alien's application for adjustment of status. Having dismissed Stewart's motion to reopen pursuant to § 242B(e)(2)(A), the BIA never addressed the merits of her application for adjustment of status.

The BIA's decision denying Stewart's motion to reopen could logically be interpreted for the purposes of § 309(c)(4)(E) either as a "decision under" § 245 (because the end result is a denial of Stewart's motion to reopen to apply for adjustment of status pursuant to § 245) or as a "decision under" § 242B(e)(2)(A) (the specific reason for the BIA's denial of Stewart's motion to reopen). Because the sections listed in § 309(c)(4)(E) all authorize the Attorney General to grant an alien discretionary relief, we believe that the better interpretation of § 309(c)(4)(E) is that it divests courts of jurisdiction only over BIA

9

decisions that address the merits of an alien's request for relief pursuant to those sections. A reviewing court, therefore, must examine the basis for the BIA's decision rather than the end result of the BIA's decision to determine whether the decision is "under" a section listed in § 309(c)(4)(E) that precludes judicial review. Applying this reasoning to this case, we conclude that the BIA's decision denying Stewart's motion to reopen was a decision under § 242B(e)(2)(A) rather than a decision under § 245 because the BIA never addressed the merits of Stewart's request for relief pursuant to § 245. Because no transitional rule, including § 309(c)(4)(E), specifically divests courts of jurisdiction over a BIA decision under § 242B(e)(2)(A), we possess jurisdiction over Stewart's petition for review. **6**

III.

Having concluded that we possess jurisdiction over Stewart's petition for review, we now review her arguments on appeal. This Court's review of a decision by the BIA denying a motion to reopen is extremely deferential; we will not reverse the BIA absent an abuse of discretion. See INS v. Doherty, 502 U.S. 314, 323 (1992); M.A. v. INS, 899 F.2d 304, 308 (4th Cir. 1990). Motions to reopen immigration proceedings are disfavored, particularly in deportation proceedings, where "every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." Doherty, 502 U.S. at 323.

Stewart's first two contentions on appeal are that her detention by the INS and her subsequent illness and hospitalization constituted "exceptional circumstances" preventing her voluntary departure from

_____

**6** We note that the only issue on appeal in cases such as Stewart's is whether the BIA erred in finding that the alien failed to establish "exceptional circumstances" excusing her overstay in the country. If the court finds that the BIA erred in finding that the alien failed to show "exceptional circumstances," the court need not go on to consider the merits of the alien's application for relief. Instead, the court should vacate the BIA's decision and remand the case to the BIA with the instruction to consider the alien's application on the merits. Such a disposition prevents the premature divesting of BIA review of a potentially meritorious application for relief.

the United States. Stewart acknowledges that the facts of her detention and illness "are not part of the `CAR'[certified administrative record]." (Appellant's Br. at 6 n.2, 7 n.3.) Because circuit precedent precludes our consideration of any facts not presented to the BIA for consideration, we cannot consider these arguments. **7** See Farrokhi v. INS, 900 F.2d 697, 700 (4th Cir. 1990).

Stewart's third and fourth contentions that "exceptional circumstances" are present are the death and disappearance of her father and mother, respectively, and the civil unrest in Sierra Leone. Although Stewart presented these arguments to the BIA in support of her applications for asylum and for withholding of deportation, she did not present them to the BIA as claims of "exceptional circumstances." Because Stewart did not properly present these claims to the BIA for consideration, we cannot consider them.**8** See id.

Finally, Stewart argues that the ineffective assistance of her counsel constituted "exceptional circumstances." Stewart hypothesizes that but for her attorney's failure to file a Form I-485, the BIA would have granted her motion to remand. Stewart failed to assert her claim of ineffective assistance of counsel to the BIA in the manner prescribed

_____

**7** Even if we could consider Stewart's arguments, we would conclude that they lacked merit. As Stewart acknowledges in her brief, she was detained by the INS on September 4, 1996, and became ill shortly thereafter. Her voluntary departure period expired on September 1, 1996, thirty days after the BIA's August 2, 1996 decision. Therefore, neither her detention by the INS nor her illness had any effect on her ability to depart voluntarily.

**8** Even if we could consider Stewart's arguments, they are not meritorious. Stewart knew about the death of her father, the disappearance of her mother, and the civil unrest in Sierra Leone well in advance of her motion to reopen. None of these circumstances, therefore, could have prevented her timely departure from the country. Moreover, Stewart's receipt of Temporary Protected Status (TPS) from the INS is irrelevant to this appeal because the Attorney General did not designate Sierra Leone for TPS until November 4, 1997, over one year after the expiration of Stewart's voluntary departure period. 62 Fed. Reg. 59736 (1997). This designation therefore could not have constituted an exceptional circumstance excusing Stewart's failure to depart.

by Matter of Lozada, 19 I & N Dec. 637 (BIA 1988).**9** Because Stewart failed properly to make a claim of ineffective assistance of counsel to the BIA, this Court cannot consider the claim. **10** See Farrokhi, 900 F.2d at 700.

In the alternative, Stewart argues that the filing of her motion to reopen deportation proceedings in itself constituted"exceptional circumstances." We reject this argument, based on the persuasive reasoning of Shaar v. INS, 141 F.3d 953 (9th Cir. 1998). In that case, the Shaars, who were nonimmigrant visitors, were found to be deportable because they had remained in the United States after the expiration of their visas. Shaar, 141 F.3d at 955. The IJ exercised his discretion to permit them to depart voluntarily, and gave them oral and written warnings that they would not be eligible for certain types of relief if they did not leave by the specified date. See id. Two or three days before their scheduled departure date, the Shaars filed a motion to reopen deportation proceedings to apply for suspension of deportation, which was denied by the BIA. See id. On petition for review, the Ninth Circuit concluded that "the departure situation was not beyond their control, and even if it were, it was not even remotely as compelling as a serious illness of the alien himself or the death of an immediate relative." Id. at 957. The Ninth Circuit also concluded that as a matter of law, the filing of the petition to reopen did not toll the statutory bar date, because the regulations did not provide for a stay or tolling upon the filing of such a petition. See id. at 958. We find this reasoning persuasive in the similar context of a motion to reopen to apply for adjustment of status.

_____

**9** An alien claiming ineffective assistance of counsel must (1) provide an affidavit detailing the agreement with counsel, (2) inform counsel of the allegation against him and provide him with an opportunity to respond, and (3) indicate whether a complaint has been filed with the appropriate disciplinary authorities. See Matter of Lozada, 19 I&N Dec. 637, 639 (BIA 1988).

**10** Even if we could consider Stewart's argument, we would find it to be without merit. It is undisputed that Stewart received multiple explicit warnings of the consequences of failure to depart. Stewart has failed to demonstrate how the actions of her former counsel prevented her from departing the country within the prescribed period.

12

IV.

In sum, the BIA did not abuse its discretion in concluding that Stewart failed to show "exceptional circumstances" warranting consideration for adjustment of status after she failed to depart the United States by the designated voluntary departure date. [11] Accordingly, Stewart's petition for review is denied and the BIA's March 1998 Order denying Stewart's motion to reopen deportation proceedings is affirmed.

AFFIRMED

_____

[11] At oral argument, a question arose with regard to the effect of judicial review on the voluntary departure period granted by the BIA. In Ramsay v. INS, 14 F.3d 206 (4th Cir. 1994), this Court decided that "the decision to reinstate or extend voluntary departures should usually be left to the discretion of the District Director." Id. at 213. We concluded that a court of appeals should reinstate a voluntary departure granted by the BIA only when the INS is wielding its discretion to deter applicants from seeking judicial review or the INS does not suggest that it will present the District Director with any other reason for refusing the reinstatement. See id. We need not determine whether Ramsay applies to this case, however. According to the INS, by the most generous calculation that this Court's mandate denying review of the August 1996 Order issued in mid-September 1997 and began the running of the thirty-day voluntary departure period, the thirty-day voluntary departure period expired in mid-October 1997. It is undisputed that Stewart did not voluntarily depart from the United States by mid-October 1997. Moreover, the circumstances cited by Stewart as reasons for her failure to depart voluntarily did not become "exceptional" by this later departure date.

13