Maria Teresa PRADO, Petitioner,

v.

Janet RENO, Attorney General of the
United States, Respondent.

No. 99–1297.

United States Court of Appeals,
First Circuit.

Heard Nov. 1, 1999.

Decided Dec. 8, 1999.

Patrick D. O'Neill, with whom Martinez, Odell & Calabria was on brief, for petitioner.

Linda S. Wernery, Attorney, Office of Immigration Litigation, with whom David W. Ogden, Acting Assistant Attorney General, and Kristen A. Giuffreda, Senior Litigation Counsel, were on brief, for respondent.

Before TORRUELLA, Chief Judge, WALLACE* and LYNCH, Circuit Judges.

LYNCH, Circuit Judge.

Maria Teresa Prado appeals from a Board of Immigration Appeals (BIA) final order of removal, or more specifically, from the BIA's dismissal of her motion to reopen earlier proceedings that had resulted in a decision to remove her. She is the mother of two children, both U.S. citizens, and the wife of a U.S. citizen.

Prado[1] asserts two claims on appeal. Her first claim is that the BIA erred

---

* Of the Ninth Circuit, sitting by designation.

1. Only Maria Teresa Prado is subject to the order issued in this case by the Board of Immigration Appeals. Accordingly, she is the only proper petitioner, despite her having named her husband and children as petitioners. Further, although suit was brought against the Immigration and Naturalization Service and the Board of Immigration Appeals, under Immigration and Naturalization

when it failed to exercise its authority under 8 C.F.R. § 3.2(a) to reopen her case on its own motion, when her motion to reopen was untimely. The Immigration and Naturalization Service (INS) asserts that jurisdiction over this claim is barred by Immigration and Naturalization Act (INA) § 242(a)(2)(B), · 8 U.S.C. § 1252(a)(2)(B), a permanent provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009–546.[2] INA § 242(a)(2)(B) states that "no court shall have jurisdiction to review ... any judgment regarding the granting of relief under ... [INA § 245]." Section 245 of the INA, 8 U.S.C. § 1255, governs adjustment of status, the relief ultimately sought by Prado. If § 242(a)(2)(B) does not apply, the INS concedes there is statutory jurisdiction under § 242(b), 8 U.S.C. § 1252(b).

Prado also asserts that INS District Counsel should have consented to her motion to reopen. If he had done so, then the untimeliness of her motion to reopen would have been forgiven. *See* 8 C.F.R. § 3.2(c)(3)(iii). The INS argues that INA § 242(g), 8 U.S.C. § 1252(g), which states that "no court shall have jurisdiction to hear any cause or claim ... arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," precludes our review of this claim.

We recently addressed similar jurisdictional questions under IIRIRA's transitional rules in *Mendes v. INS*, 197 F.3d 6 (1st Cir.1999), *Luis v. INS*, 196 F.3d 36 (1st Cir.1999), and *Bernal–Vallejo v. INS*, 195 F.3d 56 (1st Cir.1999). Much of the logic of our analysis in those cases applies here. In *Bernal–Vallejo*, we held that "whether [IIRIRA] § 309(c)(4)(E) precludes jurisdiction depends on the precise grounds upon which the decision of the [BIA] rests and the precise nature of the claims made in the petition." *Bernal–Vallejo*, 195 F.3d at 59. We hold today that whether jurisdiction is removed by INA § 242(a)(2)(B) requires a similar inquiry,[3] and that, in general terms, the section bars the exercise of jurisdiction only where the BIA decision as to which review is sought is a "judgment regarding the granting of relief under" one of the enumerated sections.

In Prado's case, we conclude that INA § 242(a)(2)(B) does not preclude review of her claim that the BIA erred in failing to reopen her case on its own motion. Other doctrines, however, do preclude our review.

We further hold that we lack jurisdiction to review Prado's claim that INS District Counsel should have consented to her motion to reopen.

## I

Prado is thirty-eight years old and is a native and citizen of Venezuela. She is married to a United States citizen and has two children under age ten, both of whom were born in the United States. Prado

Act § 242(b)(3)(A), 8 U.S.C. § 1252(b)(3)(A), the proper respondent in this case is Janet Reno, the Attorney General.

2. IIRIRA established both transitional rules and permanent rules governing judicial review. IIRIRA's transitional rules, such as IIRIRA § 309(c)(4)(E), apply to cases in which deportation proceedings commenced before April 1, 1997, and in which a final order of deportation issued after October 30, 1996. *See Bernal–Vallejo v. INS*, 195 F.3d 56, 60 (1st Cir.1999). IIRIRA's permanent provisions, such as INA § 242, apply to cases such as this one in which deportation proceedings

commenced on or after April 1, 1997. *See* IIRIRA §§ 306, 309.

3. Unlike the *Bernal–Vallejo* analysis for jurisdictional questions under IIRIRA § 309(c)(4)(E), this analysis does not involve the further inquiry into whether or not the BIA decision involved an exercise of discretion, as the statutory language in INA § 242(a)(2)(B)(i) removes jurisdiction over "any judgment ... under" an enumerated section, whereas IIRIRA § 309(c)(4)(E) removes jurisdiction over "discretionary decision[s] under" an enumerated section.

entered the United States lawfully in February, 1994, under a tourist visa which allowed her to visit for five months.[4] She overstayed. The INS instituted removal proceedings against her with a Notice to Appear on April 4, 1997, after she and her family had appeared before an INS officer in San Juan to request information regarding what Prado needed to do to become a citizen. On September 16, 1997, in proceedings before an Immigration Judge (IJ), Prado admitted that she had overstayed her visa and requested relief in the form of voluntary departure under INA § 240B, 8 U.S.C. § 1229c. The IJ granted this relief and allowed Prado to depart voluntarily by January 16, 1998, giving Prado the maximum period permitted under the statute—120 days. *See* INA § 240B(a)(2). Voluntary departure was the only relief Prado sought before the IJ. She did not at that time seek adjustment of status based upon her marriage to a U.S. citizen, presumably because she had not yet procured the requisite immediate relative visa. *See* INA § 245(a); 8 C.F.R. § 245.2(a)(2). Prado's counsel was also given written notice that Prado's failure to depart by January 16, 1998, absent compelling circumstances beyond her control, would result in her being ineligible for various forms of relief, including adjustment of status under INA § 245. If Prado wished to stay, she had only 90 days to file a motion to reopen. *See* 8 C.F.R. § 3.2(c)(2).

On November 19, 1997, the INS approved an immediate relative visa petition that Prado's husband had filed on her behalf, rendering Prado eligible to apply for adjustment of status. A month later, on December 18, 1997, Prado did apply for adjustment of status; however, she filed her application with the INS District Director in Puerto Rico, when such an application should have been filed, along with a motion to reopen, with the IJ. *See* 8 C.F.R. § 245.2(a)(1). Meanwhile, Prado had less than one month remaining in her voluntary departure period.

On January 7, 1998, nine days before her voluntary departure date, Prado delivered a letter to the INS District Director requesting an extension of the period "for the maximum amount of time allowed under present regulations" so that she could remain in the United States while her application for adjustment of status was processed. The District Director denied this request, explaining that Prado had already been granted the maximum allowable time for her period of departure.

On March 24, 1998, Prado filed a motion with the IJ to reopen her removal proceedings so she could apply for adjustment of status. She also requested the INS to join this motion. The INS opposed Prado's motion to reopen because Prado's term for voluntary departure had lapsed and she had not voluntarily departed. On May 19, 1998, the IJ denied the motion.

Prado appealed the denial of her motion to reopen to the BIA. On March 2, 1999, the BIA dismissed her appeal on the ground that the motion had been filed late. Prado's motion to reopen needed to be filed within 90 days of the IJ's decision, or, by December 15, 1997, but Prado had filed her motion to reopen on March 24, 1998. The BIA noted that even if Prado's improperly filed application for adjustment of status were deemed the equivalent of filing a motion to reopen, this application was still filed three days late, on December 18, 1997. Thus, the request for adjustment of status has never been ruled on, largely because Prado failed to take steps to present the issue in a timely fashion.

---

4. Apparently, Prado had previously entered the United States, as her first child was born in Puerto Rico in 1990. The record is silent as to the lawfulness of Prado's entry into the United States at that time. When Prado entered in the United States in February 1994, she was pregnant with her second child. She married this child's father, a U.S. citizen, in April 1994, and the child was born in Puerto Rico in August 1994, one month after Prado's tourist visa had expired.

## II

Prado raises two issues before this court. First, Prado asserts that given the exceptional circumstances of her case, the BIA erred in failing to invoke its authority under 8 C.F.R. § 3.2(a) to reopen her case sua sponte and allow her to apply for adjustment of status. Second, Prado appeals the INS District Counsel's refusal to join her motion to reopen. Both parties agree that this case is subject to the jurisdictional provisions of INA § 242 because Prado was placed in deportation proceedings after April 1, 1997.

There is no dispute that Prado's motion to reopen was untimely. Prado relies on the only two avenues available that provide mechanisms for consideration of such an untimely motion. First, under 8 C.F.R. § 3.2(a), the BIA may reopen "on its own motion any case in which it has rendered a decision." Second, under 8 C.F.R. § 3.2(c)(3)(iii), the IJ could have entertained Prado's untimely motion had the INS consented.

### A. Challenge Based on BIA's Authority to Reopen Sua Sponte

■ The INS contends that INA § 242(a)(2)(B) bars this court from hearing Prado's claim that the BIA should have invoked its sua sponte authority to reopen her case. We disagree.

The INS correctly points out that the prohibition in INA § 242(a)(2)(B), the permanent rule, is broader than the prohibition in IIRIRA § 309(c)(4)(E), the transitional rule. INA § 242(a)(2)(B) bars review of "any judgment regarding the granting of relief under" enumerated sections of the INA, while IIRIRA § 309(c)(4)(E) precludes judicial review of "discretionary decisions under" enumerated sections of the INA. Thus, the permanent rules remove more than "discretionary decisions" from review in the courts of appeals.

In *Bernal–Vallejo*, we held that review of certain non-discretionary decisions, such

as whether a minimum residency period required for certain forms of relief has been met, was not precluded under IIRIRA § 309(c)(4)(E). *See Bernal–Vallejo*, 195 F.3d at 61-62. The focus under INA § 242(a)(2)(B), in contrast, is on whether the BIA decision for which review is sought constitutes a "judgment regarding the granting of relief under" one of the enumerated sections. *See* INA § 242(a)(2)(B). In this case, then, the question is whether the BIA's dismissal of Prado's appeal from the denial of the motion to reopen was a "judgment regarding the granting of relief under" INA § 245. We conclude that it was not.

IIRIRA has presented the courts with a tangle of difficult jurisdictional issues. We have struggled to interpret the provisions of the statute in light of congressional intent and viewed against the backdrop of judicial rules of interpretation. *See, e.g., Mendes*, 197 F.3d 6; *Luis*, 196 F.3d 36; *Bernal–Vallejo*, 195 F.3d 56; *Wallace v. Reno*, 194 F.3d 279 (1st Cir.1999); *Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998). In *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Supreme Court taught that interpreting the jurisdiction limiting provisions of IIRIRA requires a close textual reading and that restrictions on jurisdiction should conform tightly to the precise language chosen by Congress. *See id.* at 943-45.

The INS's reading of § 242(a)(2)(B) as precluding review of any decision *related to* relief under an enumerated section is plausible. But it is less plausible, we think, than the reading we have chosen. The decision as to which Prado seeks review is not a BIA judgment on whether to adjust Prado's status, which would be a "judgment regarding the granting of relief under" an enumerated section, but is rather a decision not to reopen under 8 C.F.R. § 3.2. The language of § 242(a)(2)(B) contrasts with the language of IIRIRA § 309(c)(4)(G) that "there shall be no appeal permitted in the case of an alien who

is inadmissable or deportable by reason of having committed [certain enumerated offenses]." This court has viewed that language as an absolute bar to review. *See Ruckbi v. INS*, 159 F.3d 18, 21 (1st Cir. 1998). The close reading required by *American–Arab* and Congress's different choice of language leads us to conclude that § 242(a)(2)(B) does not preclude review here.

Why, it might be asked, should review of a decision under INA § 245 not to grant an adjustment of status be precluded, while judicial review of the denial of a motion to reopen to petition for adjustment of status is permitted? As explained below, the window for review is narrow; because of other doctrines of jurisdiction and judicial restraint, not all denials of motions to reopen are reviewable. But as to those denials of motions to reopen that are otherwise reviewable, there are several reasons supporting this distinction in our reading of INA § 242(a)(2)(B). The INS has established procedures governing motions to reopen an alien's case when new material information becomes available. *See* 8 C.F.R. § 3.2(c)(1) (motion to reopen must be accompanied by statement of new facts previously unavailable); *see also Wright v. Ouellette*, 171 F.3d 8, 9 (1st Cir.1999) (failure to introduce previously unavailable, material evidence is grounds for dismissing motion to reopen). In pre-IIRIRA cases, the denial of a motion to reopen was reviewed for abuse of discretion. *See Ananeh–Firempong v. INS*, 766 F.2d 621, 626–29 (1st Cir.1985) (failure to reopen was an abuse of discretion where alien had alleged new facts making her

prima facie eligible for relief). The language chosen by Congress in INA § 242(a)(2)(B) does not evidence an intent to eliminate this entirely rational, small safety valve—court review that ensures that the agency at least considers new information, even if its ultimate and unreviewable judgment denies the relief sought. It may also be that Congress wished the agency to live by its rules. Congress may have desired court review to provide a minimal control on administrative arbitrariness such as where a motion to reopen is timely filed but the agency denies it on grounds of untimeliness. The space left open for judicial review is quite narrow, but it is not irrational for the window to be open a crack, if not wide open.

Our reading is also consistent with the reasoning in *Bernal–Vallejo* and with the reasoning of other circuits. *Arrozal v. INS*, 159 F.3d 429 (9th Cir.1998), involved a BIA denial of a motion to reopen to apply for suspension of deportation, a form of relief enumerated in IIRIRA § 309(c)(4)(E). *See Arrozal*, 159 F.3d at 431. The Ninth Circuit reasoned that the BIA's discretionary denial of the motion was not a decision under the section governing suspension of deportation, but instead was a decision under the section pursuant to which the alien had been ordered deported. *See id.* at 432.[5]

In this case, the BIA dismissed Prado's appeal because she had filed her motion with the IJ after the 90 day period required under 8 C.F.R. § 3.2(c)(2) had expired. The BIA never reached the merits

---

5. Similarly, *Stewart v. INS*, 181 F.3d 587 (4th Cir.1999), involved a BIA denial of a motion to reopen to apply for adjustment of status. *See id.* at 591. Because she had overstayed her voluntary departure date, the alien in that case was required by a gatekeeper section not enumerated in the transitional rules to show "exceptional circumstances" in order to be eligible to apply for adjustment of status. *Id.* at 594. The BIA denied Stewart's motion to reopen based upon her failure to make this showing. *See id.* The Fourth Circuit viewed this denial as one made under the gatekeeper

section, not one made under the adjustment of status section. *See id.* at 594–95. Thus, it determined that the transitional rules did not preclude review. The court reasoned that decisions "under" the enumerated sections are ones where the BIA "specifically addresses" the merits of an alien's request for relief under an enumerated section, and the court suggested that the inquiry as to whether a decision is one "under" an enumerated section requires "examining the *basis for* the BIA's decision rather than the *end result* of the BIA's decision." *Id.* at 595.

of Prado's application for adjustment of status. Thus, the BIA's decision was a judgment under 8 C.F.R. § 3.2(c), not INA § 245. Accordingly, INA § 242(a)(2)(B) does not preclude our review of Prado's claim that the BIA should have invoked its sua sponte authority under 8 C.F.R. § 3.2(a) to reopen her case. Prado's claim, however, is not reviewable for other reasons.

■ Neither in her motion to reopen nor in her appeal from the denial of her motion to reopen did Prado request the BIA to invoke its sua sponte authority under 8 C.F.R. § 3.2(a). Thus, she did not exhaust her administrative remedies. "Usually issues not raised before the BIA may not be raised for the first time on a petition for review." *Bernal–Vallejo*, 195 F.3d at 64; *see also* INA § 242(d)(1); *Ravindran v. INS*, 976 F.2d 754, 761 (1st Cir.1992).

■ Even more importantly, because "the decision of the BIA whether to invoke its sua sponte authority is committed to its unfettered discretion," *Luis*, 196 F.3d at 40, Prado's claim is simply not justiciable. *See id.* at 40-41; *see also Heckler v. Chaney*, 470 U.S. 821, 831–33, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Massachusetts Pub. Interest Research Group, Inc. v. United States Nuclear Regulatory Comm'n*, 852 F.2d 9, 14–19 (1st Cir.1988).

We also note that the plain meaning of the regulation suggests that the BIA could not have invoked its sua sponte authority on behalf of Prado. The regulation allows the BIA to reopen on its own motion "any case in which it has rendered a decision." 8 C.F.R. § 3.2(a). In this case, the BIA had not rendered any decisions until it denied Prado's appeal; only the IJ had rendered a decision. The regulation does not speak to the BIA reopening on its own motion cases in which only an IJ has rendered a decision.

**6.** At oral argument, counsel for the INS stated that Prado could leave the country and then

## B. Challenge Based on the INS's Decision to Oppose Reopening

The INS argues that INA § 242(g) precludes our review of the INS's decision not to join Prado's motion. Because review is precluded for other reasons, we do not address this question.

■ INA § 242(b) grants this court jurisdiction to review "order[s] of removal." Pre–IIRIRA, jurisdiction in the courts of appeals was also limited to review of BIA final orders. *See* INA § 106, 8 U.S.C. 1105a (repealed); *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212–13, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Gottesman v. INS*, 33 F.3d 383, 386 (4th Cir.1994); *Lad v. INS*, 539 F.2d 808, 809 (1st Cir.1976). The District Counsel's decision in this case was not a final order of removal, and § 242(b) does not grant the courts of appeals jurisdiction to review the underlying decisions of the INS. *See American–Arab*, 119 S.Ct. at 945 (nothing in INA § 242 affirmatively grants jurisdiction to review the Attorney General's decision to commence proceedings).

■ Moreover, the INS's decision whether to consent to reopening under 8 C.F.R. § 3.2(c)(3)(iii) is not justiciable. The regulation prescribes no standards or guidelines for this exercise of discretion, and, therefore, it is not subject to review in this court. *See Luis*, 196 F.3d at 40-41.

As is true with time limits that American citizens are required to meet, Prado was held to time limits, and she failed to meet them. Whether the outcome—removal from the United States—would have been the same had she complied with the time limits and properly presented an application for adjustment of status, no one knows. Under the INA as amended by IIRIRA, sadly she will either be separated from her family, or, in order to stay together, she and her family will have to leave this country.[6] Neither Congress nor

apply to be admitted as an immigrant. To do so, Prado would first need to apply for a

the Constitution has given the courts a role in this outcome.

The petition for review is *dismissed* and the stay of deportation is *vacated.* So ordered.

---

waiver, as her overstaying has rendered her inadmissible for a period of ten years. *See* INA § 212(a)(9)(A)-(B), 8 U.S.C. § 1182(a)(9)(A)-(B).