**Diana C. WESTOVER, a/k/a Diana C. Bindloss, Petitioner,**

**v.**

**Janet RENO, Attorney General of the United States, Respondent.**

No. 99–1564.

United States Court of Appeals, First Circuit.

Heard Jan. 4, 2000.

Decided Feb. 9, 2000.

M. Ronald Gould, with whom Justin Gould was on brief, for appellant.

John S. Hogan, Attorney, Office of Immigration Litigation, with whom David W. Ogden, Acting Assistant Attorney General, and Karen Fletcher Tortenson, Assistant Director, were on brief, for respondent.

Before TORRUELLA, Chief Judge, BOUDIN and LYNCH, Circuit Judges.

LYNCH, Circuit Judge.

■ Diana Westover[1] is a native of Tanzania who married her American fiancé after removal proceedings against her commenced in 1992. Westover has remained in the United States for the past eight years while proceedings against her have been pending. She seeks review of a Board of Immigration Appeals (BIA) final order of removal. In issuing the order, the BIA upheld the decision of the Immigration Judge finding Westover removable and denying her applications for the discretionary relief of adjustment of status and voluntary departure. Certain actions by the INS in this case raise concerns, but in the end those actions are not relevant to the legitimate basis for the removal order, which we affirm.

Westover attacks both the finding that she is removable and the denial of her application for adjustment of status. Westover argues (1) that her deportation proceedings should be voided because they were the result of an illegal search and because her warrantless arrest violated the Fourth and Fifth Amendments of the United States Constitution and violated Immigration and Naturalization Service regulations; (2) that the BIA relied on impermissible factors in affirming the denial of her application for adjustment of status; (3) that the INS should have been estopped from charging her as deportable and instituting removal proceedings

against her; (4) that the IJ erred in failing to adjudicate her Form I–601 Application for Waiver; (5) that the INS improperly charged her with being an "overstay," and (6) that the BIA's decision to affirm the finding of deportability is not supported by substantial evidence and the BIA erred in affirming the denial of her application for adjustment of status. For the reasons stated below, we affirm the order of the BIA.

**I**

The facts are taken from the proceedings before the IJ. Westover is forty-one years old and is a native of Tanzania and a citizen of the United Kingdom. She has resided in the United States almost continuously since 1987. On March 5, 1992, Westover acquired a six month, non-immigrant visitor visa from United States Customs Inspector Jay Labier at the Port of Entry in West Berkshire, Vermont. Westover's then current visa had not yet expired, but she wanted to extend it. Because her old visa had not yet expired, Westover left the United States for a period of approximately ten minutes so that she could return and apply for a new visa. Westover told Labier that she intended to stay in the United States for three to four weeks while she and her fiancé awaited the finalization of his divorce so that they could get married. After consulting with superiors, Labier issued Westover a new visa.

Two months later, on May 7, 1992, Vermont State Police, accompanied by INS agents, conducted a search of Westover's fiancé's home. Westover also lived there. The search revealed approximately 300 marijuana plants being grown in the home. Westover was never charged by the police

---

1. When Petitioner was placed into deportation proceedings, her surname was Bindloss. She married Terry Westover on May 21, 1992. Since Petitioner refers to herself in her brief to this court using the surname Westover, we do the same.

Additionally, Westover named Doris Meissner, Commissioner of the INS, as a respondent. The only proper respondent in an appeal from a BIA final order, though, is the Attorney General of the United States. *See* 8 U.S.C. § 1252(b)(3)(A); *Prado v. Reno*, 198 F.3d 286, 287 n. 1 (1st Cir.1999).

with any crime. Westover's fiancé was arrested, but charges against him were later dropped when the search was found to have violated the Fourth Amendment. At the time of the search, Westover was arrested by INS agent David Boocock, and a different agent, Agent Maskell, began investigating her status. At this time she requested a hearing before an immigration judge to determine her removability. From her fiancé's home, Westover was transported to the Vermont State Police barracks, and eventually the police transferred her to INS custody. Westover was questioned at Border Patrol Headquarters by agent Boocock. According to Boocock, she told him that she had no intention of ever leaving the United States, and she withdrew her request for a hearing.

After the questioning by Boocock, the INS issued Westover a Show Cause order, charging her with deportability under then 8 U.S.C. § 1251(a)(1)(A) on two separate grounds.[2] First, Westover was charged with being excludable at entry pursuant to 8 U.S.C. § 1182(a)(6)(C)(i) as an alien who by fraud or willful misrepresentation procured a visa or entry into the United States. Second, based upon the allegations in the first charge, Westover was charged under 8 U.S.C. § 1182(a)(7)(A)(i) as an alien not in possession of a valid, unexpired visa or entry document. Later, during her removal proceedings and after her visa had expired, the INS additionally charged her under then 8 U.S.C. § 1251(a)(1)(B) for overstaying her visitor visa. Westover requested relief in the form of adjustment of status under 8 U.S.C. § 1255 and, in the alternative, voluntary departure under 8 U.S.C. § 1254(e).[3]

Westover testified at her hearing that she had overstayed visas on at least three other occasions. She also admitted to working in the United States without au-

thorization for most of the time that she had been here, and she admitted to her failure to pay federal income taxes on her income. Westover gave somewhat conflicting testimony regarding what she told the border agents at the time of her last entry. She denied telling Agent Labier that she intended to marry or reside in the United States, and she testified that she said nothing regarding where she intended to reside after marrying her fiancé. She also testified, however, that she informed the agents that she and her fiancé would leave the United States, and that they would get married and go to Canada. Westover also gave ambiguous and somewhat conflicting testimony with regard to what her intentions were upon reentry and where she and her fiancé intended to reside. She claimed that she and her husband intended to go to the United Kingdom or to Canada, but she also said they intended to buy a boat and travel. While her husband put his house in Vermont up for sale, suggesting the two intended to leave the country, he did so only after she was placed in removal proceedings, and he continued to own a home in New York. It appears that Westover intended to stay in the United States until her fiancé's divorce became final, yet finalization of the divorce had already been pending almost a year when Westover reentered, and it was not certain at the time of her reentry when the divorce would become final. Westover provided the IJ with affidavits from members of her family, but they gave little indication of where Westover intended to reside.

After the hearing, the IJ determined that Westover had no intention of leaving the United States when she procured the March 5, 1992, visa and found her deportable based upon all three charges.

---

**2.** In 1996, 8 U.S.C. § 1251 was transferred to 8 U.S.C. § 1227. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104–208, § 305(a)(2), 110 Stat. 3009–546, –598.

**3.** The provisions for voluntary departure are now codified at 8 U.S.C. § 1229c.

The IJ denied both requests for discretionary relief. In doing so, the IJ noted that Westover's testimony regarding her knowledge of the marijuana growing operation in her fiancé's home was not credible; that she gave false information on her application for adjustment of status; that she had worked without authorization in the United States and had paid no federal income tax; and that she had previously overstayed her visitor visas. In light of her "prior adverse immigration record and her lack of complete candor," the IJ denied both forms of relief "as a matter of discretion."

The BIA upheld both the IJ's finding of deportability and his denial of discretionary relief. In reviewing the deportability finding, the BIA excluded from consideration the testimony of both Inspector Labier and Agent Boocock (in response to Westover's challenge to the use of evidence that was the result of the illegal search). Westover also claimed before the BIA that the INS's charging her with overstaying constituted a denial of due process, but the BIA, relying on its own precedent, dismissed this claim.

## II

*A. Constitutional and Statutory Violations*

■ Westover alleges that her removal proceedings have been tainted by constitutional and statutory violations in two senses; that the proceedings themselves are invalid and that certain evidence must, in any event, be excluded.[4] Even though the search of her fiancé's home violated the Fourth Amendment, this is not a basis upon which she can attack the validity of her removal proceedings. The Supreme Court has held that an alien cannot challenge the INS's discovery of her illegal status or the institution of removal proceedings that resulted from an illegal search. *See INS v. Lopez–Mendoza,* 468 U.S. 1032, 1040, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). An alien may be able to challenge the use of illegally seized evidence, but only if the seizure constituted an "egregious" violation of the Fourth Amendment. *See id.* at 1050–51, 104 S.Ct. 3479 (plurality opinion). In this case the BIA affirmed the decision of the IJ without relying on the testimony of the two INS officers.[5] Thus, we need not decide whether statements made at the time of Westover's arrest were admissible.

Westover also claims that INS officers violated federal statutes and regulations in arresting and detaining her. First, she claims that she was not informed of the reason for her arrest or of her removal hearing rights, as required by 8 C.F.R. § 287.3(c) when an alien is arrested without a warrant. The record reveals, however, that Westover was so informed.

■ Second, Westover claims that her warrantless arrest violated 8 U.S.C. § 1357(a)(2), which states that an INS officer "shall have power without warrant . . . to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States [unlawfully] and is likely to escape before a warrant can be obtained for his arrest." The government has not responded to this argument, and it appears from the record that Westover's claim is most likely valid. While INS agents may have had probable cause to arrest Westover by the time they

---

4. Westover also asserts that her arrest and removal proceedings constitute a violation of due process under the Fifth Amendment. Her constitutional challenge arises from an illegal search and a warrantless arrest, though, and is properly analyzed under the Fourth Amendment.

5. It is not clear why the BIA excluded from consideration the testimony of Inspector Labier, the INS official who was at the border station when Westover reentered. Westover has not alleged any constitutional violations at that border crossing; thus, it appears there is no reason to exclude Labier's testimony about statements Westover made to him at the time.

took her into custody,[6] there is no evidence that Westover was likely to escape before a warrant could be obtained for her arrest. We do not condone the agents' conduct, which appears from the record to be in direct violation of the statute. Given that Fourth Amendment violations do not constitute grounds for invalidating removal proceedings, though, this mere statutory argument on similar grounds cannot give Westover a basis for relief. *See Katris v. INS*, 562 F.2d 866, 869 (2d Cir.1977) (arrest in violation of 8 U.S.C. § 1357(a)(2) does not void subsequent deportation hearing). Whether evidence obtained from a statutorily invalid arrest should be admitted in an alien's removal hearing is a more difficult question, *cf. Navia–Duran v. INS*, 568 F.2d 803, 809–811 & n. 7 (1st Cir.1977) (excluding coerced confession but not deciding whether INS agent had violated 8 U.S.C. § 1357(a)(2) or the effect any such violation might have), but the BIA did not consider any evidence from the time of Westover's arrest.

*B. Effect of 8 U.S.C. § 1255(i)*

Aliens who, inter alia, have worked in the United States without authorization, are in unlawful immigration status, have failed to maintain lawful status, or have violated the terms of a non-immigrant visa are not eligible for adjustment of status. *See* 8 U.S.C. § 1255(c). Under 8 U.S.C. § 1255(i), however, aliens ineligible for adjustment of status by virtue of § 1255(c) because they have committed certain transgressions can still apply for adjustment of status. *See* 8 U.S.C. § 1255(i). They must pay a $1,000 application fee and meet other procedural requirements. *See id.*

■ Although she never submitted an application under § 1255(i), Westover ar-

gues that the terms of the section precluded the IJ and the BIA from considering her various transgressions of the immigration laws (specifically, those listed in § 1255(c)) when deciding on her application for adjustment of status. Her argument fails for three reasons.

First, Congress enacted § 1255(i) in 1994, and the section went into effect on October 1, 1994. *See* Act of Aug. 26, 1994, Pub.L. 103–317, § 506(c), 108 Stat. 1724, 1765, *as amended by* Act of Nov. 26, 1997, Pub.L. 105–119, § 111(b), 111 Stat. 2440, 2458, *set out as note under* 8 U.S.C. § 1182. INS regulations specify that § 1255(i) *does not* apply to applications for adjustment of status filed *before* October 1, 1994. *See* 8 C.F.R. § 245.10(e). Westover filed her application for adjustment of status on December 17, 1992. Thus, § 1255(i) does not apply to her application.

Second, before an alien can be granted the discretionary relief of adjustment of status, she must be prima facie eligible to apply for adjustment of status. The provisions in § 1255(i) render eligible an alien who would otherwise be prima facie ineligible to apply for adjustment of status. These provisions simply do not preclude the IJ or BIA from considering transgressions of the immigration laws in making the ultimate discretionary determination whether to grant adjustment of status.

■ Third, although Westover asserts that the IJ contravened the dictates of § 1255(i) when adjudicating her application for adjustment of status, she did not object at her hearing, and she did not raise the issue on appeal before the BIA. Having remained silent, she has waived any challenge to the BIA's consideration of the factors listed in § 1255(i). *See Bernal–*

---

**6.** Westover focuses on the fact that, at the time of her arrest, INS agents had no reason to believe she intended to remain in the United States indefinitely. However, by the time Boocock arrested Westover, he had probable cause to believe that she was involved in the marijuana growing operation, which could

have ultimately rendered her removable. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (rendering removable an alien convicted of a drug related offense); *cf.* 8 U.S.C. § 1182(a)(2)(C) (rendering inadmissible an alien who an immigration officer has reason to believe has aided in drug trafficking).

*Vallejo v. INS,* 195 F.3d 56, 64 (1st Cir. 1999).

### C. Estoppel Claim

■ Westover claims that the INS should be estopped from charging her with being excludable at entry and being present without a valid visa, as she acquired her visa upon instructions from the INS. This argument is without merit. The INS did not instruct Westover that if she intended to stay permanently in the United States, she should apply for a new visa. Instead, the INS instructed Westover that she could leave the country and apply for a new six-month visa. She did this. Nothing in the record suggests that the INS knew, at the time it gave her this advice, that she was intending to violate immigration laws or that she had previously violated immigration laws. Later she was charged with obtaining this visa with the intent to stay indefinitely. Estoppel requires showing that the government engaged in "affirmative misconduct" that caused the petitioning individual to act in a way she otherwise would not have. *See Akbarin v. INS,* 669 F.2d 839, 842–43 (1st Cir.1982). Westover has failed to meet either of these requirements. There is no evidence of government misconduct.

### D. Failure to Adjudicate Form I–601

■ Westover claims that the BIA erred in not adjudicating her form I–601 (waiver of grounds of excludability). Form I–601 allows an alien who would otherwise be ineligible for adjustment of status to have the grounds of her ineligibility waived. *See* 8 C.F.R. § 212.7(a)(1)(ii). Since the IJ denied Westover's application for adjustment of status as a matter of discretion, there was no need to adjudicate the form I–601.

### E. The Overstay Charge

Westover's visa (which the INS considers to have been fraudulently obtained) was valid when the show cause order was issued but lapsed during her removal pro-

ceedings. The INS then added the charge of being an overstay to her show cause order. Westover asserts that being charged with overstaying in this context is a violation of due process. The BIA dismissed this claim based upon its holding, twenty-five years ago, in *Matter of Halabi,* 15 I. & N. Dec. 105, 1974 WL 30010 (1974). In that case, the BIA held that it was permissible for the INS to charge the alien with overstaying his visa when his visa had expired because he had remained in the United States to defend himself in removal proceedings initially brought on other grounds. *See id.* at 106. The BIA noted that the alien had not attempted to obtain an extension from the INS. *See id.* The Chairman of the BIA dissented, finding that this practice violated due process. *See id.* at 107 (Roberts, Chairman, dissenting).

If an alien leaves the country before her visa expires and during her deportation proceedings, she may well be unable to defend against the original charges. If she stays, however, she becomes removable as a result of overstaying. It may be that one could successfully challenge the original charges through counsel without personally appearing. The government's position, and the BIA's position in *Halabi,* is that the alien should apply for an extension of her visa from the INS District Director. However, as the *Halabi* dissent noted, *see id.* at 107–08, applying for an extension is likely futile. In this case, the INS considers Westover to be without a valid visa. There is no reason to believe that the District Director would grant Westover an extension on what the INS considers an invalid visa. Furthermore, in order to apply for an extension, an alien must have maintained her status and must present a valid visa. *See* 8 C.F.R. § 214.1(a)(3), (c)(4). The charges lodged against Westover demonstrate that the INS does not consider Westover capable of meeting these requirements. *See Halabi,* 15 I. & N. Dec. at 107–08 (Roberts, Chairman, dissenting).

We pause to note that the practice of charging aliens with overstaying when they remain in the United States to defend themselves in removal proceedings could cause us some concern on given facts. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the core of these due process rights is ... a meaningful opportunity to be heard." *Choeum v. INS*, 129 F.3d 29, 38 (1st Cir.1997) (internal quotation marks and citation omitted); *see also Lozada v. INS*, 857 F.2d 10, 13 (1st Cir.1988) (due process violated if alien is prevented from reasonably presenting her case).[7]

The BIA upheld the IJ's findings regarding the original charges that Westover was excludable at entry and was present without a valid visa, and we affirm its order of removal on these grounds, without deciding the overstay issue.

### F. The BIA's Decision to Uphold the IJ's Finding of Deportability

 We review the BIA's decision in this case under the substantial evidence standard. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Cordero–Trejo v. INS*, 40 F.3d 482, 488 (1st Cir.1994). Under this standard, we will reverse the BIA's decision only if the evidence presented would compel us to find for the petitioner. *See Elias–Zacarias*, 502 U.S. at 483–84, 112 S.Ct. 812. As the recitation of the facts earlier in this opinion shows, the evidence in this case was sufficient for the BIA to uphold the findings of the IJ.

### G. Denial of Discretionary Relief

 Westover also claims that the BIA erred in denying her application for adjustment of status. Because she was placed into removal proceedings before April 1, 1997, and her final order of removal came after October 30, 1996, Westover's appeal is governed by § 309(c)(4)(E) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. 104–208, 110 Stat. 3009–546, a transitional rule regarding judicial review. *See Prado v. Reno*, 198 F.3d 286, 288 n. 2 (1st Cir.1999); *Kalaw v. INS*, 133 F.3d 1147, 1149–50 (9th Cir.1997); IIRIRA § 309(c)(4), *set out as note under* 8 U.S.C. § 1101. Under these transitional rules,[8] we lack jurisdiction to review the BIA's discretionary denial of Westover's application for adjustment of status. *See Bernal–Vallejo*, 195 F.3d at 61–63.

### III

We *affirm* the BIA's order of removal on the basis of the two original charges lodged by the INS.

7. The real danger of this practice is that it could be used to remove an alien on weak or even false original charges as long as the alien's visa will expire during removal proceedings. *Cf. Akhbari v. INS*, 678 F.2d 575, 576–78 (5th Cir.1982). The question is difficult and highly fact dependent. INS hearing officers are badly overburdened; the eight years of proceedings here are not the result of agency ineptitude, and there are frequently delays, which usually work to the benefit of the alien.

8. IIRIRA's permanent rules governing judicial review, codified at 8 U.S.C. § 1252, apply to cases in which removal proceedings commenced on or after April 1, 1997. *See Prado*, 198 F.3d at 288 n. 2.